**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

GOV. EMPLOYEES INS. CO., *et al.*,

       Plaintiffs,

       v.

SERGE MENKIN, MD, *et al.*,

       Defendants.

</td><td>

Civil Action No. 23-2184 (ZNQ) (JBD)

**OPINION**

</td></tr>
</table>

**QURAISHI, District Judge**

This matter comes before the Court upon the Motion to Dismiss (the "Motion," ECF No. 6) filed by Defendants Serge Menkin, MD ("Menkin"), the Center for Joint & Spine Relief, PA (the "Center for Joint & Spine" or "CJS"), Lawrence Petracco, DC ("Petracco"), United Care Medical, PLLC ("United Medical"), and Advanced Pain Solutions, PC ("Advanced Pain") (collectively, "Defendants"). In support of their Motion, Defendants filed a brief. ("Moving Br.," ECF No. 6-2.) Plaintiffs Government Employees General Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or "Plaintiffs") filed an opposition ("Opp'n Br.," ECF No. 8), to which Defendants did not reply. After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons outlined below, the Court will GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

I.       **BACKGROUND**

     A.       **Procedural Background**

On April 19, 2023, GEICO filed a Complaint stemming from various no-fault insurance charges that Defendants submitted to GEICO for reimbursement under the New Jersey and New York no-fault insurance statutes ("Compl.," ECF No. 1).  The Complaint asserts claims against CJS, United Medical, and Advanced Pain for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 (Count One), against CJS, Menkin, and Petracco for violation of the New Jersey Insurance Fraud Prevention Act ("NJIFPA") (Count Two), against Menkin and Petracco for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts Three and Four), against CJS, Menkin, and Petracco for common law fraud and unjust enrichment (Counts Five and Six, respectively), against Menkin for further RICO violations (Counts Seven and Eight), against United Medical and Menkin for common law fraud and unjust enrichment (Counts Nine and Ten, respectively), against Advanced Pain and Menkin for NJIFPA violations (Count Eleven), against Menkin for further RICO violations (Count Twelve), and against Advanced Pain for common law fraud and unjust enrichment (Counts Thirteen and Fourteen, respectively). On May 22, 2023, Defendants filed the current Motion to Dismiss for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

     B.       **Factual Background**[2]

From 2018 to the present (the "Relevant Period"), Menkin and Petracco[3] performed medical and chiropractic services for people injured in automobile accidents ("Insureds") who were eligible for no-fault insurance coverage ("Personal Injury Protection" or "PIP" benefits) in New York and New Jersey under state no-fault insurance laws.  (Compl. ¶¶ 1–2.)  The Complaint

---

[2] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[3] The Complaint additionally mentions some providers who performed services at Petracco and/or Menkin's direction.

alleges that these medical and chiropractic services (the "Fraudulent Services"), to the extent

provided at all, were not medically necessary and often were not "legitimately provided in the first

instance"—rather, they were provided "pursuant to pre-determined fraudulent protocols designed

to financially enrich the Defendants." (*Id.* ¶ 6.)  Defendants' billing for the Fraudulent Services

exaggerated and misrepresented the treatments, fraudulently inflating the charges that Defendants

ultimately submitted to GEICO.  (*Id.*)  The Fraudulent Services were provided primarily at CJS,

United Medical, and Advanced Pain, in which Menkin and Petracco held "significant beneficial

interest[s],"[4] through self-referrals that the Complaint alleges were made unlawfully.  (*Id.* ¶¶ 86–

89.)  Defendants submitted thousands of allegedly unlawful no-fault insurance charges to GEICO

during the Relevant Period,[5] totaling over $2.3 million that Plaintiffs now seek to recover.  (*Id.* ¶

1.)

## II.   JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over the federal

claims alleged in the Complaint, and supplemental jurisdiction over the other claims pursuant to

28 U.S.C. § 1367.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

If a court determines that it lacks subject matter jurisdiction over a suit, it must be

dismissed.  *See* Fed. R. Civ. P. 12(h)(3).  A Rule 12(b)(1) motion can raise a facial attack or a

factual attack, which determines the standard of review.  *Constitution Party of Pa. v. Aichele*, 757

F.3d 347, 357 (3d Cir. 2014).  A facial attack "is an argument that considers a claim on its face and

asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for

---

[4] Petracco is a chiropractor who owns and treats patients at CJS.  Menkin is a physician who owns United Medical and Advanced Pain, and who treats patients at both locations as well as at CJS. (Compl. ¶ 5.)
[5] Defendants submitted the charges on behalf of their patients pursuant to assignments of those patients' PIP benefits to Defendants under GEICO's Decision Point Review Plan.  (Compl. ¶¶ 26–29.)

example, it does not present a question of federal law . . . or because some other jurisdictional defect is present." *Id.* at 358. In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff. *Id.* On the other hand, a factual attack "concerns the actual failure of [a plaintiff's] claims to comport with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (internal quotation marks omitted). When considering a factual challenge, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist," the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations . . . ." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B.    Rules 12(b)(6) and 9(b)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).  On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Under Rule 9(b) and in conjunction with Rule 12(b)(6), fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  A court may grant a motion to dismiss a fraud-based claim if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007).  The level of particularity required is sufficient details to put the defendant "on notice of the precise misconduct with which [it is] charged." *Id.* at 201 (quoting *Lum v. Bank of Am.*, 261 F.3d 217, 223–24 (3d Cir. 2004) (abrogated on other grounds)) (internal quotation marks omitted).  At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006).  The heightened pleading standard set forth in Rule 9(b) applies to NJIFPA and common law fraud claims. *See, e.g.*, *GEICO v. Elkholy*, Civ. No. 21-16255, 2022 WL 2373917, at *4–5, *11–12 (D.N.J. June 30, 2022) ("*Elkholy*").

## IV.   DISCUSSION

Defendants make three primary arguments for why various counts of the Complaint should be dismissed: 1) the Court lacks subject matter jurisdiction to hear Plaintiffs' claims involving New Jersey "PIP Benefits Disputes" because those claims must be resolved through arbitration under both GEICO's own Decision Point Review Plan ("DPRP") and New Jersey's no-fault insurance statute; 2) Plaintiffs failed to sufficiently plead their NJIFPA claims; and 3) the Court

will lack subject matter jurisdiction to hear Plaintiffs' state law claims against United Medical, a

New York Professional Limited Liability Company, after dismissing Plaintiffs' federal claims.

> **A.      Arbitrability of Plaintiffs' RICO, Unjust Enrichment, and Common Law Fraud Claims** (Counts Three, Four, Five, Six, Seven, Eight, Nine, Ten, Twelve, Thirteen, and Fourteen)

New Jersey's no-fault insurance statute contains an arbitration provision that states:

> Any dispute regarding the recovery of [PIP] benefits . . . arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute.

N.J.S.A. 39:6A-5.1(a).  GEICO's DPRP, which allows Defendants to submit PIP benefits claims

to GEICO for certain medical services they provide following a car accident upon an assignment

of the patient's PIP benefits to Defendants, also contains an arbitration provision.  GEICO's DPRP

reads:

> "Assignment of an Insured's . . . rights to receive benefits for medically necessary treatment, durable medical equipment tests or other services is prohibited except to licensed health care providers who must agree to . . . [e.] Submit disputes to Dispute Resolution pursuant to N.J.A.C. 11:3-5 . . . ."

(Defs.' Decl., Ex. B at 13 (ECF No. 6-1 at 40).)

Defendants rely heavily on the decision of another court in this district in *Elkholy* to argue

that both New Jersey's no-fault insurance statute and GEICO's DPRP mandate arbitration of

Plaintiffs' claims.  They highlight the Court's findings in that case that the plaintiff insurance

company's RICO, common law fraud, and unjust enrichment claims were subject to "mandatory

No Fault Arbitration" under New Jersey's no-fault insurance statute and consequently that the

Court lacked subject matter jurisdiction over the claims.  (Moving Br. at 16.)  Defendants argue

that the same reasoning should be applied here to dismiss Counts Three, Four, Five, Six, Seven,

Eight, Twelve, and Thirteen.  (*Id.* at 7–8 ("[S]imilar to the GEICO plan in the *Elkholy* matter, the

GEICO plan here mandates arbitration of all but the NJIFPA claims.").)  In Defendants' view, the

6

New Jersey statute "expressly mandates arbitration for the claims alleged in this case," (*id.* at 10 (listing examples given by the statute)), and GEICO "hopes to disrupt the statutory scheme" by avoiding arbitration.  (*Id.* at 18.)  Defendants cite other cases within this district and the Third Circuit that have similarly interpreted New Jersey's no-fault insurance statute to have "broad arbitration requirements" and mandated arbitration of claims like Plaintiffs' claims in this case. (*Id.* at 16–17 (citing *GEICO v. Tri County Neurology & Rehabilitation, LLC*, 721 F. App'x 118, 122 (3d Cir. 2018) and *GEICO v. MLS Med. Grp., LLC*, Civ. No. 12-7281, 2013 WL 6384652, at *4 (D.N.J. Dec. 6, 2013)).)

Plaintiffs, on the other hand, maintain that their claims are not subject to arbitration under either the New Jersey no-fault insurance statute or under GEICO's DPRP.  Regarding the former, Plaintiffs argue that the "overwhelming weight of authority in this District . . . holds that the arbitration provisions in New Jersey's PIP insurance statute do <u>not</u> require a plaintiff-insurer to arbitrate IFPA, fraud, unjust enrichment, RICO, or other fraud-based claims," because they "go beyond" the type of "routine PIP disputes for which arbitration is mandatory" under New Jersey law.  (Opp'n Br. at 7, 10 (emphasis in original) (citing *GEICO v. Mount Prospect Chiropractic Ctr., P.A.*, Civ. No. 22-737, 2023 WL 2063115, at *5, *12 (D.N.J. Feb. 17, 2023)).)  Plaintiffs characterize *Elkholy* as an "outlying decision" in this district, and argue that the two cases relied on by Defendants—*Tri County Neurology* and *MCS Medical*—are inapposite here.  (*Id.* at 9–10 ("Every other court to have considered the issue is in accord, which illustrates the extent to which the <u>Elkholy</u> decision is an outlier.").)  Plaintiffs add that their claims are not subject to arbitration under GEICO's DPRP either, because there was never a valid assignment of benefits.[6]  (*Id.* at 16–17, 17 n.7.)

---

[6] Plaintiffs also argue that their NJIFPA claims are not subject to arbitration, (*see* Opp'n Br. at 17–18), but because Defendants' Motion does not seek dismissal of those claims on that basis, the Court will not address the issue.

Here, the Court finds that Plaintiffs' RICO, unjust enrichment, and common law fraud claims are subject to arbitration under New Jersey's no-fault insurance statute, and therefore that the Court must dismiss them for lack of subject matter jurisdiction.[7] Having reviewed the authority cited by the parties, the Court finds that Plaintiffs mischaracterize the case law when they assert that the "overwhelming weight of authority" in this district holds that RICO, common law fraud, and unjust enrichment claims regarding PIP benefits are not subject to arbitration. A careful reading of the cases cited by Plaintiffs to support this point reveals that those decisions themselves rely on cases that solely deny the arbitrability of NJIFPA claims, *i.e.*, the underlying cases are silent as to the arbitrability of RICO, fraud, and unjust enrichment claims. *See, e.g.*, *GEICO v. Adams Chiropractic Ctr., P.C.*, Civ. No. 19-20633, 2020 WL 881514, at *1 n.3 (D.N.J. Feb. 24, 2020) (relying on *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 489, 492 (D.N.J. 2018) ("The NJIFPA is not preempted by PIP arbitration rules.")); *GEICO v. Regional Orthopedic Prof'l Ass'n*, Civ. No. 17-1615, 2017 WL 5986964 (D.N.J. Dec. 1, 2017) ("Geico's allegations go beyond such dispute, and may be adjudicated in this Court.") (citing *Fed. Ins. Co. v. Von Windherburg-Cordeiro*, Civ. No. 12-2491, 2012 WL 6761877 (D.N.J. Dec. 31, 2012) (IFPA claims are not arbitrable) and *Nationwide Mut. Fire Ins. Co. v. Fiouris*, 928 A.2d 154, 157 (N.J. App. Div. 2007) (same)); *see also GEICO v. Stelton Radiology Corp.*, Civ. No. 18-532, 2022 WL 1486116, at *5 (D.N.J. May 11, 2022) (relying on *Adams Chiropractic* and *Regional Orthopedic*).

As Defendants note, in *Elkholy* the Court recently held that RICO, unjust enrichment, and common law fraud claims concerning New Jersey PIP benefits are in fact subject to arbitration. To reach this conclusion, the Court examined in-depth the plain language of New Jersey's no-fault insurance statute as well as the legislative intent behind it. *Elkholy*, 2022 WL 2373917, at *6–7

---

[7] The Court therefore does not reach Defendants' argument that GEICO's DPRP mandates arbitration of Plaintiffs' RICO, unjust enrichment, and common law fraud claims.

("Notwithstanding that the Geico Entities seek to dress their PIP Benefits dispute in a different color sounding in fraud, the Court adheres to substance over form. Nothing in the statute provides that fraud-based claims warrant special treatment or should be carved out from mandatory arbitration, nor can the Court find any independent reason to do so.").

Similarly, the Court recently concluded in *State Farm Guaranty Ins. Co. v. Tri-County Chiropractic & Rehabilitation Ctr., P.C.*, Civ. No. 22-4852, 2023 WL 4362748, at *6–7 (D.N.J. July 6, 2023), that the plaintiff's RICO, unjust enrichment, and common law fraud claims were subject to arbitration after analyzing the plain language and purpose of New Jersey's no-fault insurance statute, as well as several previous cases in this district that addressed the issue. *See also GEICO v. Caring Pain Mgmt. PC*, Civ. No. 22-5017, 2023 WL 3749984, at *6 (D.N.J. May 31, 2023) ("The Court is not persuaded by Plaintiffs' attempt to 'dress their PIP Benefits dispute in a different color sounding in fraud.'") (quoting *Elkholy*, 2022 WL 2373917, at *6). The Court agrees with the reasoning articulated in *Elkholy*, *Tri-County Chiropractic*, and *Caring Pain*, and finds that Plaintiff's RICO, unjust enrichment, and fraud claims concerning New Jersey PIP benefits are subject to arbitration under New Jersey's no-fault insurance statute.

The Court will therefore dismiss Counts Three to Ten and Twelve to Fourteen[8] without prejudice for lack of subject matter jurisdiction.

### B.      Sufficiency of Plaintiffs' NJIFPA Claims (Counts Two and Eleven)

Defendants separately seek dismissal of Counts Two and Eleven of the Complaint—Plaintiffs' NJIFPA claims—because the pleadings do not meet the heightened standard for alleging fraud under Rule 9(b).[9]   Defendants contend that the Complaint contains "broad-based

---

[8] For reasons unclear, Defendants do not argue that Counts Nine, Ten, or Fourteen should be subject to arbitration, but the Court *sua sponte* finds, as it must, that those claims are also subject to arbitration for the same reasons set forth above.

[9] In the relevant section of their brief, Defendants defend why their "cookie-cutter approach" to treatment for the Insureds was lawful. (Moving Br. at 20–21) ("The defendants here followed the No-Fault mandated and GEICO DPRP mandated Care Paths and as a matter of law cannot now be found liable for knowing, intentional insurance

9

allegations," lacking "claim-specific allegations of knowing misrepresentations as required under the law." (Moving Br. at 19, 22.)  Moreover, the Complaint "provides no basis for th[e] conclusory allegation" that Defendants were not merely following mandatory "Carepaths" prescribed by NJ PIP protocol when they engaged in the allegedly Fraudulent Services.  (*Id.* at 21.)  Defendants fault the Complaint insofar as it "generally alleges that improper self-referrals occurred without any specificity as to when, how, where, how much, or any other details to meet the specificity pleading requirements," and without providing any basis for why Defendants had knowledge about the misrepresentations they allegedly made.  (*Id.* at 21–22.)

Plaintiffs maintain that the Complaint "pleads detailed facts" in support of the NJIFPA claims, including facts "to show how the Defendants misrepresented the nature, extent, medical necessity, and results of the[ir] purported services" and to show how Defendants engaged in illegal self-referrals.  (Opp'n Br. at 23–24.)  Plaintiffs argue that the Complaint "includes numerous, claim-specific examples of the Defendants' fraudulent misrepresentations, including the 'who, what, when, where, and why' of a large number of their discrete, fraudulent acts."  (*Id.* at 24.)  They insist Counts Two and Eleven meet Rule 9(b)'s heightened pleading standard because: 1) the claims put Defendants on notice of the fraud alleged against them, as evidenced by their motion papers that "attempt[] to rebut GEICO's fraud claims through a variety of conclusory denials and defective technical arguments"; and 2) multiple federal courts both within and outside of this district have refused to dismiss fraud allegations with "substantially similar level[s] of detail" as alleged here by GEICO.  (*Id.* at 25 (collecting cases).)

For the reasons set forth below, the Court finds that the Complaint sufficiently alleges Plaintiffs' NJIFPA claims.  In compliance with Rule 9(b), the Complaint does indeed articulate

---

fraud by following these mandates.").  This argument is not relevant to whether Plaintiffs' NJIFPA claims are sufficiently pled, therefore the Court does not address it.

the "who, what, when, where, and why" of the NJIFPA claims by providing the following details

regarding several dozen Insureds that allegedly received Fraudulent Services: the specific date

Defendants rendered treatment, what the treatment was (and when it occurred—for example, if it

was rendered in either the initial or follow-up medical stages), which physician or chiropractor

provided the treatment, the location of the treatment, the exact cost of the treatment, and which

medical code the treatment was billed under, as well as what those codes indicate in the medical

community.  (*See* Compl. ¶¶ 101, 112, 148, 170, 196, 202, 220,  240, 306, 345.)[10]  These details

are more than sufficient to put Defendants on notice of the fraud alleged against them.  Moreover,

the Complaint's exhaustive explanation of what each billing code used by Defendants means—

including duration of face-time during treatment, the severity of a given Insured's injury, the

categorization of treatments as "consultations" which require the submission of written reports,

the description of examinations as "detailed" or "comprehensive," and the extent of the complexity

of medical decision-making required by various treatments—the Complaint provides a plausible

basis for Plaintiffs' claims that Defendants knowingly engaged in, and misrepresented various

aspects of, the Fraudulent Services.  (*Id.* ¶¶ 123–47.)

The Court will therefore deny Defendants' Motion to Dismiss with respect to Counts Two

and Eleven.

### C.   Subject Matter Jurisdiction

After deciding that it will dismiss Counts Three to Ten and Counts Twelve to Fourteen and

deciding that Counts Two and Eleven are sufficiently pled, the Court will now turn to the only

count it has yet to address, Count One, as well as related subject matter jurisdiction concerns.

---

[10] The Court notes that these are only representative samples of hundreds of pages listing allegedly fraudulent no-fault insurance claims that Defendants submitted to GEICO during the Relevant Period.  (*See* Compl., Exs. 1–3.)

1.      **The Court Lacks Subject Matter Jurisdiction Over Count One to the Extent it Seeks Judgment Relating to the Complaint's Alleged RICO Violations, Common Law Fraud, and Unjust Enrichment Liability**

Count One seeks a broad declaratory judgment that Defendants "were not in compliance with all significant laws and regulations governing healthcare practices in New Jersey." (Compl. ¶ 362.) To the extent Count One seeks a judgment declaring that Defendants violated RICO, committed common law fraud, or are liable for unjust enrichment, an arbitrator will decide those issues, as discussed above. Therefore, Count One will be dismissed to the extent it seeks relief as to those specific allegations.

In substance, this means that the remaining scope of Count I as to CJS and Advanced Pain seeks a declaratory judgment as to their violation of the NJIFPA, which the Court addresses further, below. The Complaint, however, does not allege a corresponding NJIFPA claim as to United Medical, only common law fraud and unjust enrichment, which will be determined by an arbitrator. The Court will therefore dismiss Count One as to United Medical. Given that this is the sole remaining claim against United Medical, United Medical will be dismissed entirely from the case.

2.      **Count One Must be Dismissed Because it is Duplicative to the Extent it Seeks Judgment Relating to Alleged NJIFPA Violations**

The only remaining alleged violations within the Complaint outside of Count One besides those subject to arbitration are the NJIFPA violations against against CJS and Advanced Pain. To the extent Count One seeks a judgment declaring that CJS and Advanced Pain violated the NJIFPA, the Court will exercise its discretion to dismiss Count One as duplicative of Counts Two and Four. *See GEICO v. Caring Pain Mgmt. PC*, 2023 WL 3749984, at *8 ("Courts may exercise . . . discretion and dismiss declaratory judgment claims where . . . [they are] duplicative or redundant of other claims."); *see also Elkholy*, 2022 WL 2373917, at *12 (dismissing declaratory judgment claim because it was duplicative of an NJIFPA count that the Court retained).

      **3.**     **The Court Has Subject Matter Jurisdiction Over Counts Two and Eleven**

Defendants separately challenge the Court's subject matter jurisdiction following dismissal of the Complaint's federal claims.  (Moving Br. at 22–23.)

For purposes of assessing diversity jurisdiction, Plaintiffs are citizens of Nebraska and Montana.  (Compl. ¶ 9.)  Menkin and Petracco are citizens of New Jersey.  (*Id.* ¶¶ 13, 17.) Advanced Pain, a professional corporation, is a citizen of New Jersey.  (*Id.* ¶ 12).  *See Dental Care of S. Jersey v. ACE Prop. & Casualty Ins. Co.*, Civ. No. 20-12480, 2020 WL 12188144, at \*2 (D.N.J. Sept. 11, 2020) ("[As] New Jersey appears to treat a professional corporation the same as a traditional corporation, this Court finds that the citizenship of a New Jersey professional corporation is the same as a traditional corporation under 28 U.S.C. § 1332(c)(1).").  CJS, a professional association, is also a citizen of New Jersey.  (*Id.* ¶10.)  *See Dental Care of S. Jersey*, 2020 WL 12188144, at \*2 (applying professional corporation analysis to a professional association).  Accordingly, the Court finds that the parties are completely diverse.  Insofar as the matter in controversy also exceeds $75,000, the Court finds that it has subject matter jurisdiction over the remaining state law claims: Counts Two and Eleven.

## V.   CONCLUSION

For the reasons outlined above, Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.  Counts One, Three to Ten, and Twelve to Fourteen will be DISMISSED without prejudice.  Defendant United Care Medical, PLLC will be DISMISSED. Counts Two and Eleven will proceed.  An appropriate Order will follow.

Date: December 30, 2023

                                    s/ Zahid N. Quraishi
                                      **ZAHID N. QURAISHI**
                                      **UNITED STATES DISTRICT JUDGE**